# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
### PEORIA DIVISION

| | |
|---|---|
| JEFFREY B. STONE and ERIC D. STONE, | )<br>)<br>) |
| Plaintiffs, | )<br>) |
| v. | ) Case No. 1:24-cv-1078<br>)<br>) |
| LOCAL NO. 171 PENSION FUND, | )<br>) |
| Defendant. | ) |

## ORDER & OPINION

This matter is before the Court on Defendant Local No. 171 Pension Fund's Motion to Dismiss or, in the Alternative, to Transfer Pursuant to 28 U.S.C. § 1404(a). (Doc. 6). Defendant filed an accompanying Memorandum of Law (doc. 6-1), and Plaintiffs responded (doc. 7). This matter is therefore ripe for review. For the following reasons, Defendant's Motion is granted, and this matter is dismissed.

### BACKGROUND

On February 20, 2024, Plaintiffs Jeffrey B. Stone ("Jeff") and Eric D. Stone ("Eric") (collectively referred to as "Brothers" or "Plaintiffs") filed this suit, seeking declaratory judgment pursuant to 28 U.S.C. § 2201. (Doc. 1). Plaintiffs are Illinois residents, and Defendant (also referred to as "the Plan") is a "multiemployer defined-benefit employee pension benefit plan" under the Employee Retirement Income Security Act ("ERISA"). (Doc. 1 at 1). The Court is asked to resolve Defendant's claims that Plaintiffs

> breached fiduciary and related duties to the Plan pursuant to various sections of ERISA including ERISA Section 404, 29 U.S.C. § 1104, attempted to "evade and avoid" liabilities to the Plan pursuant to ERISA Section 4212(c), 29 U.S.C. § 1392, and committed other bad acts relative to the Plan and possibly also pursuant to common law, giving rise to personal liability pursuant to various sections of ERISA, including ERISA Section 409, 29 U.S.C. § 1109.

(Doc. 1 at 2).

This controversy surrounds Biehl Cleaners, Inc. ("Biehl"), a dry-cleaning business with various locations in Central Illinois. (Doc. 1 at 2). At all times relevant to this matter, the Brothers owned Biehl, and beginning in 1996, the dry-cleaning company's primary location (the "Property") was in Peoria, Illinois. (Doc. 1 at 2). Biehl was a party to a collective bargaining agreement as a contributing employer, pursuant to which Biehl contributed to the Plan, and Jeff Stone was a Trustee of and named fiduciary with respect to the Plan. (Doc. 1 at 3). More recently, Biehl experienced a "marked decline in business," which caused Plaintiffs to cease operations. (Doc. 1 at 4). The last paycheck to an employee was issued on December 31, 2019. (Doc. 1 at 4). Plaintiffs sold off assets from the business, including the Property in Peoria, Illinois. (Doc. 1 at 5). Despite being listed for sale initially as a part of the Biehl business, the Property was sold by Plaintiffs' limited liability company, Stone Brothers LLC ("Stone LLC") as a "standalone property." (Doc. 1 at 4–5). Each brother received distributions in March and November of 2021 from Stone LLC, which totaled 175,000 dollars. (Doc. 1 at 5).

Around the time Plaintiffs were closing the business, Biehl received demand letters from Defendant, notifying the company that it owed payments for withdrawal

2

liability in the amount of 4,626,146 dollars. (Doc. 1 at 5). Defendant then notified Plaintiffs that Stone LLC was also liable for the outstanding withdrawal liability principal. (Doc. 1 at 5). When the demand letters went unanswered, Defendant filed a lawsuit (referred to as the "Company Action") against Biehl, Stone LLC, and the Delbert M. Stone Revocable Trust in the United States District Court for the Southern District of New York on March 15, 2022. (Docs. 1 at 5; 6-1 at 2–3). On March 19, 2023, Biehl and Stone LLC each filed for bankruptcy in the Central District of Illinois. (Doc. 1 at 5–6). The Company Action was stayed pending the bankruptcy proceedings. (Doc. 1 at 5–6).

On October 13, 2023, the Plan filed a lawsuit (referred to as the "Personal Liability Action") against Plaintiffs in the Southern District of New York, claiming that each brother is personally liable for "part or all of Biehl's alleged liability to the Plan, as a result of the distributions in 2021 by Stone LLC." (Doc. 1 at 6). The Plan voluntarily dismissed the Personal Liability Action, allegedly because interested parties discussed how initiation of the lawsuit violated the stay issued for the bankruptcy proceedings. (Doc. 1 at 7). As of the filing of the instant lawsuit, the Biehl bankruptcy has closed, but the Stone LLC bankruptcy remains pending. (Doc. 1 at 7). As any attempt at settlement failed, the Plan refiled the Personal Liability Action against Plaintiffs in the Southern District of New York. (Doc. 6-1 at 8). That action remains pending.

Plaintiffs now seek declaratory judgment, requesting this Court to find that neither brother "owe any amounts to the Plan under any theory of liability asserted

by the Plan." (Doc. 1 at 8). Defendant moves to dismiss this matter, or, in the alternative, to transfer to the Southern District of New York. (Doc. 6).

## DISCUSSION

The Declaratory Judgment Act provides that district courts "may declare the rights and other legal relations of any interested party, not that it *must* do so." *Haze v. Kubicek*, 880 F.3d 946, 951 (7th Cir. 2018) (quoting *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 136 (2007)). As such, "this statutory language has long been understood to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants." *Amling v. Harrow Indus. LLC*, 943 F.3d 373, 379 (7th Cir. 2019). In other words, a federal court has the power to decline to hear a declaratory judgment action, even if the court has jurisdiction over the action. *Tempco Elec. Heater Corp. v. Omega Eng'g, Inc.*, 819 F.2d 746, 747 (7th Cir. 1987). And when a declaratory judgment action parallels a "mirror-image action seeking coercive relief—we ordinarily give priority to the coercive action, regardless of which case was filed first." *Rsch. Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.*, 626 F.3d 973, 980 (7th Cir. 2010).

This action requests the Court to "resolve claims by the Plan" that Plaintiffs breached certain duties and committed other acts giving rise to personal liability. (Docs. 1 at 2; 7 at 1). Plaintiffs argue that the Court should exercise discretion to "keep this case on the books, here in Central Illinois" because this matter was filed properly. (Doc. 7 at 5–7). Defendant disagrees, pointing out that this is an anticipatorily filed lawsuit, and that Plaintiffs have engaged in prejudicial and

4

impermissible forum shopping. The Court agrees with Defendant—there are various reasons that support dismissal, including to discourage the misuse of declaratory judgment actions, to avoid wasting judicial resources, and to prevent against the possibility of different outcomes in the two cases.

The first reason related to misusing declaratory judgment actions weighs heavily in favor of dismissal. The Seventh Circuit prefers coercive actions over declaratory judgment actions, and rejects the "first-to-file" rule, which prevents declaratory judgment actions from becoming a means of forum shopping. *Tempco*, 819 F.2d at 749–50 (rejecting "first-to-file" rule and holding that declaratory judgment actions should not be used offensively). Also, this statute is not "a tool with which potential litigants may secure a delay or choose the forum. Declaratory judgment actions brought in the face of clear threats of suit and seeking determinations that no liability exists will be closely scrutinized as potentially improper anticipatory filings if the other party proceeds to file." *Schwarz v. Nat'l Van Lines, Inc.*, 317 F. Supp. 2d 829, 833 (N.D. Ill. 2004) (internal citations omitted).

Plaintiffs' action, upon inspection, fails this consideration. The allegations include that Plaintiffs received demand letters from Defendant as early as January 14, 2021. (Doc. 1 at 5). Defendant went on to file the Company Action on March 15, 2022. (Doc. 1 at 5). The letters and lawsuit provided notice to Plaintiffs of the Plan's intent to sue for withdrawal liability. Then, Defendant filed the Personal Liability Action against Plaintiffs in the Southern District of New York on October 13, 2023. (Doc. 1 at 6). Although that matter was dismissed voluntarily, there is little doubt

5

that Plaintiffs acted in the face of the clear threat that they were going to be sued in their personal capacities for the withdrawal liability allegedly incurred by Biehl. While this declaratory judgment was filed before the Personal Liability Action was refiled by Defendant, the Court gives no weight to that fact, as the Seventh Circuit does not rigidly adhere to the first-filed rule and the allegations establish that this matter was anticipatorily filed. In other words, Plaintiffs have misused the Declaratory Judgment Act.

The arguments to the contrary are unpersuasive. Plaintiffs discuss how Defendant dismissed the Personal Liability Action "but was still threatening to pursue them for over $ 4,000,000 if a settlement was not reached." (Doc. 7 at 5). A purpose of the Declaratory Judgment Act is to prevent one party from using the threat of litigation against another as an intimidation tactic "while deliberately avoiding a determination of the parties' rights." *Republic Techs. (NA), LLC v. BBK Tobacco & Foods, LLC*, 240 F. Supp. 3d 848, 852 (N.D. Ill. 2016). But here, there is no evidence that Defendant was avoiding litigation as a means of intimidating Plaintiffs—they themselves allege that Defendant was prevented from filing the Personal Liability Action due to the stay triggered by the bankruptcy proceedings.[1] Additionally, there are no allegations to support that Defendant failed to engage in

---

[1] This is a disputed allegation. Defendant puts forth that it voluntarily dismissed the 2023 Personal Liability Action to engage in settlement negotiations with Plaintiffs. (Doc. 6-1 at 3). At this stage in the pleadings, the Court accepts as true the allegations put forth by Plaintiffs. *See United States ex rel. Berkowitz v. Automation Aids, Inc.*, 896 F.3d 834, 839 (7th Cir. 2018). Albeit considering this dispute would not alter the analysis, as neither reason demonstrates that Defendant was purposefully avoiding litigation as an intimidation tactic.

negotiations or otherwise acted in bad faith—it was Plaintiffs who were "unwilling to discuss settlement . . . while [the Plan's] litigation seeking the same relief remains pending." (Doc. 7 at 6). Therefore, this argument is ineffective.

Plaintiffs also argue that this matter is properly filed because Illinois is the correct venue for this dispute to be heard, and Defendant is the party who engaged in forum shopping as the vast majority of events giving rise to this dispute occurred here. (Doc. 7). It is possible that this argument has merit; however, Plaintiffs state that they will file a motion in the Southern District of New York for transfer to the Central District of Illinois, and this Court does not prevent them from doing so. In response to the instant Motion, Plaintiffs have failed to demonstrate why this Court should exercise its declaratory judgment jurisdiction. They do not argue that they filed this action to avoid the accrual of further damage or explain "how the allowance of the instant declaratory judgment action would effectuate the purposes of the statute and thereby afford relief from uncertainty and insecurity with respect to rights, status and other legal relations." *Cunningham Brothers, Inc. v. Bail*, 407 F.2d 1168 (7th Cir. 1969). If this action were to proceed, Defendant would be forced "to litigate claims that it may not have wanted to litigate at a time that might be inconvenient . . . or which might precede [its] determination of the full extent of [its] damages, and in a forum chosen by . . . the alleged tortfeasor." *Patil v. 10PM Curfew, LLC*, No. 4:23-CV-16, 2023 WL 6847027, at *8 (N.D. Ind. Oct. 17, 2023) (citation and internal quotation marks omitted). This argument is rejected; the Court's

7

consideration of whether Plaintiffs' claim for declaratory judgment is improper weighs in favor of dismissal.

The second and third reasons that weigh in favor of dismissing Plaintiffs' Complaint are to avoid wasting judicial resources and to prevent against different outcomes. The parties ask this Court and the Southern District of New York to adjudicate whether Plaintiffs are personally liable for any part of the withdrawal liability incurred by Biehl, and other derivative issues, like whether the sale of the Property was improper or if the corporate veil should be pierced. (Doc. 1 at 7). The parties similarly request this Court to engage in a venue transfer analysis; Plaintiffs remind that they have requested the Southern District of New York to do the same. For both courts to do so would be a significant waste of judicial resources. Not only would this be a duplication of efforts, but it opens the door to the possibility that the merits of this case might ultimately be decided differently. Dismissal guarantees that only one court will engage in such analysis.

The Seventh Circuit has repeatedly affirmed district court efforts to conserve judicial resources by avoiding duplicative litigation. *See Rsch. Automation*, 626 F.3d at 975 ("To prevent duplication of this sort, district courts may transfer, enjoin, or dismiss one of the lawsuits."); *Trippe Mfg. Co. v. Am. Power Conversion Corp.*, 46 F.3d 624, 629 (7th Cir. 1995) (affirming dismissal of declaratory judgment suit for similar reasons). Adjudicating these matters in two separate federal courts simultaneously would be a waste of resources and a misuse of declaratory actions. Because the Court agrees with Defendant's argument in support of dismissing the action, it will not

8

address whether the case should be transferred to a different district. Plaintiffs' Complaint is dismissed without prejudice.

## CONCLUSION

IT IS THEREFORE ORDERED that Defendant's Motion (doc. 6) is GRANTED. Plaintiffs' Complaint (doc. 1) is DISMISSED WITHOUT PREJUDICE. As no issues remain pending, this matter is TERMINATED.

SO ORDERED.

Entered this 19th day of December 2024.

s/ Joe B. McDade  
JOE BILLY McDADE  
United States Senior District Judge